Case No. 181491 Operating Engineers Local 324 Pension Fund v. Bourdow Contracting Incorporated May it please the Court, Josh Ledford on behalf of Appellant Defendant Bourdow Contracting. I'd like to reserve three minutes for rebuttal, please. Before turning to what I look at as the main legal issue in this case, I'd like to address one of the points raised by the Fund, and that is the issue of forfeiture or waiver of that federal common law argument relating to whether or not 1392 should be the exclusive remedy here. Three points bear noting. First, the District Court in its holding, in its opinion, specifically ruled on the question of whether or not federal common law could be applied to the case at hand. And the Court reached the conclusion that, in fact, it would be appropriate to utilize federal common law to impute withdrawal liability onto a separate organization. Under extant Sixth Circuit case law, the fact that the District Court analyzed that decision in its opinion indicates that this is a live issue for appeal, and for the Court's reference I'd refer to Chambers v. Adams 230 F3D 1357 and Lane v. Bell 72 Fed Appendix 389, both Sixth Circuit decisions that support that conclusion, that since the District Court did address it, it's a live issue for appeal. But couldn't we say that your client invited the error? I don't think that's accurate. I would disagree with that statement for the reason that when I read the lower level briefing, I don't see an argument from defendant, or I'm sorry, from Bedell Contracting's prior counsel that this is the appropriate standard, this is what should be applied. I read it almost as assuming arguendo. And I think that- But they didn't offer an alternative. They just said, well, here are the factors. Under this test, here are the factors. Here's how we win under those factors. They did that. They also addressed the fact, though, that they addressed 1392. They addressed ERISA's remedial scheme. So the fundamental case law, the fundamental law is addressed, and the argument is made in the previous briefing that applying 1392, there's no intent, and truckings, which are liabilities, should not be imputed to contracting. So I think under the case law we refer to in our appellate briefing, the fact that that remedial mechanism that ERISA as a whole referenced was applied justifies consideration of that argument on appeal. A third point also bears noting, and that is the Sixth Circuit has not addressed this very important, very novel question of law, and that is whether or not federal common law successor alter ego theory should be applied in the context of imputing one entity's, which are liability, onto another entity. The closest this Court has come is in a very recent decision that is PBGC v. Finlay Industries. The site to that case is 902 F3D 597. It's a 2018 Sixth Circuit decision. But what's critical about Finlay is not so much the holding, but it's the rationale applied by the majority and the dissent. And Finlay actually presents a very unique set of circumstances in that if the majority was looking at this case and the dissent were looking at this case, it's our position they'd reach the same conclusion, and that is it's not appropriate to apply federal common law. And in Finlay, the holding ultimately was, given the facts in that case, the majority over Judge McKee's dissent determined that it was appropriate in a single employer pension plan situation under ERISA to go to federal common law to impute successor liability on a sham company. I mean, for the Finlay decision, you read through that, it's made crystal clear that that was a sham operation. It was not an arm's length transaction. The intent in that whole thing was to avoid those pension liabilities. And because of that, the Court was faced with a choice. Either apply the common law and give the PBGC a mechanism to impose that liability on a wrongdoer or stand back and do nothing. And the reason they'd have to stand back and do nothing is because ERISA, the applicable provisions of ERISA that applied to the single employer plans, did not give the PBGC any avenue to impose liabilities on a sham transaction or a sham company. Now here, this Court is not faced with that Hobson's choice. It's a completely different set of circumstances. And that is because what Judge McKeague suggested in his dissent happened in this case. The PBGC lobbied Congress and secured the Multi-Employer Pension Protection Amendments Act, which presented significant more protection, significant more remedial measures for a pension fund to go after withdrawal liability of a sham organization. And that's through Section 1392. Section 1392 did not apply to the facts that were live in Finley. Here, the fund agrees. We could go after contracting under Section 1392. And the fund also contends that they should win under a Section 1392 analysis. Because of that, this Court is not faced with a set of circumstances of saying we need to go to the federal common law, we need to resort to federal common law, or allow potential wrongdoers, potential sham organizations to get away scot-free and unscathed. That's simply not presented when we're dealing with withdrawal liability in multi-employer pension protection, I'm sorry, under multi-employer pension plans. And for that reason, that distinction between Finley and the present set of circumstances, this Court should not resort to the federal common law. It should not take that extraordinary measure. That said, if the Court decides to go to the federal common law, the District Court under Finley now used the wrong federal common law. The Finley Court does not use the NLRB light test for alter ego successor status. The Finley Court says, we're going to take a hybrid approach of labor and employment case law. And in the situation, and they, I think the holding and how it's limited just reinforces this, that. Wait a minute, though, didn't your client assert that test at the District Court? They analyze the NLRB light test. It's analyzed and it's argued that alter ego status should not be found. Again, they also analyze 1392. There is nothing... But you've sort of switched position a bit from what you were, the way you were arguing your position in the District Court. I think the prior counsel, Your Honor, argued effectively in the alternative. Don't have the benefit of... You didn't represent this part at the District Court. No, sir. But again, we say in our appellate briefing, the fact that given the equitable nature of this case, given that this is a novel issue of law, it's appropriate to consider this issue of law in this case. When you argued that they argued in the alternative, were you saying they said, well, here are the NLRA test factors, 1, 2, 3, 4, 5. Here's how we win under those. And here's how it would play out under 1392 and... It's not as artfully pled as I would have liked, but it goes through the alter ego status and then you go right into 1392 in their briefing and say, 1392, we win as well. And again, I see it as everyone's arguing that the alter ego status should be applied. Here's what it is. We're assuming that the court's going to apply this test and the case is just not close. And here you go, court, tee it up. There's no alter ego status here because there's no disguised continuance. These aren't the same companies. They're not substantially identical. I think that was in the mindset before the lower court. But be that as it may, this issue is very important. It affects a lot of folks other than the parties in this case. But that sounds just a little bit to me like there were two possible tests and you briefed the test that you thought you would win under because you thought you were going to win, is what you're saying. You thought you were going to win before the district court under that test and then you didn't. And so now you'd like a different test? Well, the other thing is this, Your Honor, that Finley came out after this case was briefed, especially before the district court, before the district court had an opportunity to rule. And Finley comes out and says, under ERISA, we're not going to apply the NLRB test. We're going to apply a hybrid approach of labor and employment law. And when they do that, they hold. All we decide today is that if a sale is not conducted at an arm's length transaction, successor liability can't apply. They're hesitant to impose successor type alter ego type liability on a bona fide corporation. That's new law that did not apply before this case was argued before the district court. For that reason, that standard should be applied to this. Still on appeal, your argument is you get the benefit of that ruling and we should remand to the district court to apply that test? Is that what? I don't necessarily, I don't want to go there because the other issue is this. This is the stand alone and let's look at the NLRB test itself. I know you think this whole case or appeal is going to be determined based on a selection of legal tests and you're arguing broad or maybe specific concepts of law. That's how we get to what the correct test is. And rather than stay immersed in that argument for a moment, I'd like to ask you to address the equities of the situation in terms of whether the purportedly successor company utilized the same, or the extent to which they utilized the same management and whether the operations were the same or similarly in terms of the continuity of the workforce and. Thank you, your honor. Whether the customers were transferred from one company to the other or whether the customers went to the next company and whether the supervisory roles were the same in both companies. I don't know whether the ownership structure was the same or similar. Yes, your honor. The traditional standard of alter ego status applied by the NLRB. Yes. You look at that. Even if you disagree that that's the correct test, it can be nice to get your views on all of that. We briefed that extensively and the ultimate test before you today on de novo review to reach this conclusion is, are these the same companies? Is there a disguised continuance? Is this a sham organization separated only by argument and not by form? And when you look at the individualized factors. I don't know what the sham organization, I mean, it's a matter of. The district court says, acknowledges their operations, their scope of work, their customer base is a target. It's the bullseye in an overall target board. That's not substantially identical. Hold on. Hold on. Thank you. I don't know what you mean by sham organization, but whether the, I mean, it was an actual business operation. Both companies were actual business operations. So in that sense, neither was a sham. There was nothing. Hold on. Hold on. Hold on. We can't both talk at the same time. I refer the court's attention to the Ninth Circuit case that's referenced in Finley and that is Michael's floor covering. There the court says we have to apply the alter ego standard consistent with the multi-employer pension protection act. And it goes through a construction industry analysis and says your customer base is important when it impacts the fund. And here we are not playing with the same customer pool. To allow recovery for the fund of this withdrawal liability is double recovery. Counsel. Yes, sir. You're here to persuade and you can't persuade if you don't listen and try to be responsive to the questions. I'm attempting to answer your question, your honor. Not if you interrupt and don't permit the question to be addressed to you and don't respond to the question. But for right now, you're out of time. So we'll hear from your opposing counsel. Thank you, your honor. Good morning. May it please the court. Matt Henze. I represent the pension fund. To the panel, I think that contracting did invite the error. Contracting filed a motion for summary judgment which it essentially told Judge Murphy, here's the alter ego test which he adopted citing the all coast case. And that's the case that Judge Murphy cited to in large measure when analyzing the factors set forth in that case. So it is an invited error. I agree with my opponent that the fund argued that it should succeed on either theory, either the 1392C argument or under strict alter ego. I think that this was a fully developed record. I think Judge Murphy's decision was well reasoned even though I wish that he would have found for the fund on all the factors. But having said that, these cases are difficult to prove because they are fact sensitive. And there were extraordinary facts in this case that caused him to rule the way that he did. And I ask that you affirm his decision. Unless you have any questions, I'll rely on the brief. I think that I've covered everything that I wanted to say, except for one thing. I just wanted to point out that Judge Murphy's opinion and order at page 8 has a heading that talks about the actionability of alter ego cases under the MPPAA and the appellant did not address any of those cases in its argument, which I think is telling. I think that Judge Murphy gave the blueprint for why they are actionable and his decisions should stand. Thank you. Thank you very much. Counsel, do you have any rebuttal? Yes, Your Honor. Turning to the traditional NLRA test or NLRB test of alter ego status, Michael's floor covering the Ninth Circuit case that's referenced in Finley goes through a nice analysis that states if we're going to use alter ego or successor employer standards, those common law standards to impute liability under ERISA, under the multi-employer section of ERISA, it must be done in a manner that is consistent with that act. To be consistent with that act, there's a number of factors that the district court found in favor of the fund that are just contrary to ERISA's fundamental goals and fundamental policy statements. For instance, common ownership. He took 18% commonality to say substantial identicalness between those companies. The company's ownership is 80% different. If you go to ERISA, the common control group, ownership isn't a question until you have common ownership of 80% and 50% to hit those tests for common control for the control group. Is that when that's the only factor as opposed to when the court is using an accumulation of factors? That would be under that specific statutory test where you're only looking at that. What I'm saying, if you're expanding this, certainly the individual factors should be applied consistent with ERISA. The other thing is this, looking at the familial relationship, ERISA has attribution rules. A wife's stock is imputed back to the husband and so on and so forth. Minor children, that's attributed back to the parent. Here we have adult individuals that are striking their own after dad's business goes belly up and is bankrupt. Your arguments focus on the substantive decision. I wonder if you have arguments with respect to the remedy, the damages. Damages, Your Honor, the raised judicata issue is specifically, I think that's well briefed and then what I comment on is it's very striking and obscene that trucking's liability was $1.2 million. You go through this process where all you're saying is they're the same entity but now it's $3.3 million or $3.5 million? I just wonder if you know, is that eligible for discharge? I'm not the bankruptcy counsel that handled that. They chose to look at that from the fact that the bankruptcy judgment was a final order on the merits and therefore is claim preclusion or has a raised judicata effect. What I'd close with is this. This case, this company is a very small organization. It is not the same thing as trucking. It has very, it's minor in comparison to a statewide company. Now a couple guys just trying to make ends meet. This case is important to them. If they lose this case, that company goes bankrupt. There is no other choice. I was asking, are they eligible to file again? They will file bankruptcy. They will file bankruptcy. They will be out of business. They will be out of a livelihood. Three people will have no careers. Any further questions? Thank you.